**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

**DERRICK WILLIAMSON**,
an individual, and **THE WAY DYNAMIC ANIMAL THERAPY ENCOUNTERS, INC.**,
a Georgia Domestic Profit Corporation,
**PARAMOUNT WILDLIFE INCORPORATED**, a Georgia Domestic Non-Profit Corporation.

Case No:______________

Plaintiffs,

v.

**Plaintiffs' Verified Complaint**

**MORGAN COUNTY, GEORGIA**,
a political subdivision of the State of Georgia;
**CONNIE HOLT**, individually and in her official capacity as Chief Magistrate Judge of Morgan County;
**STEPHEN A. BRADLEY**, individually and in his official capacity as a Judge of the Superior Court of Morgan County;
**JULIE RUARK**, individually and in her official capacity as Magistrate Court Clerk of Morgan County;
**RICKY BROWN**, individually and in his official capacity as a Deputy of the Morgan County Sheriff's Office;
**CHRISTOPHER LASH**, individually and in his official capacity as a Sergeant of the Morgan County Sheriff's Office;
**TIFFANY ALLISTON**, individually and in her official capacity as a Sergeant of the Morgan County Sheriff's Office;
**CHASE YOUNG**, individually and in his official capacity as an Investigator of the Morgan County Sheriff's Office;
**CAMERON PATAK**, individually and in his

official capacity as an Investigator
of the Morgan County Sheriff's Office;
**NICOLE KANOY**, individually; **WILDLIFE CRITTERS CIRCLE OF LIFE REHABILITATION CENTER, INC; ANIMALS ON SET**; and
**JOHN** and **JANE DOES 1-20**, being unknown **DEMAND FOR JURY TRIAL**
individuals, public officials, and deputies
of Morgan County, Defendants.
_____________________________________________/

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This is a civil rights action for monetary damages, declaratory relief, and injunctive relief arising from a prolonged, coordinated, and malicious campaign by Morgan County officials to unlawfully dispossess a young Black entrepreneur of his land, destroy his animal therapy business, and punish him for speaking out against their corruption. Over the course of more than four years, Defendants, acting under color of state law, have engaged in a continuous pattern of unconstitutional conduct that includes the ongoing deprivation of property without due process of law, malicious prosecution, and a conspiracy to violate equal protection rights.

2. Plaintiff Derrick Williamson is the sole officer and shareholder of The Way Dynamic Animal Therapy Encounters, Inc. ("The Ark"), a Georgia for-profit corporation that lawfully purchased a $1.4 million farm in Morgan County, and the sole principal of Paramount Wildlife Incorporated, a Georgia nonprofit corporation operating a native wildlife sanctuary on the same property. Despite holding clear legal title to the property, Mr. Williamson was forcibly removed from his own land by a Magistrate Judge acting without jurisdiction, arrested on his own

property while he was the documented victim of an assault, prosecuted for speaking out about judicial corruption, and left to watch as his animals were sold, slaughtered, and stolen. To this day, Plaintiffs remain dispossessed of their property while also being responsible to pay the mortgage, constituting an ongoing and continuous violation of their constitutional rights.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the Constitution of the United States and federal statutes, specifically 42 U.S.C. §§ 1983, 1985, and 1986. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4), which confer jurisdiction over civil actions to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution or by any Act of Congress providing for equal rights of citizens.

4. This Court has supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Middle District of Georgia pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Morgan County, Georgia, which is located within this judicial district. Pursuant to Local Rule 3.4 of the Middle District of Georgia, this action is properly filed in the Athens Division because the claims arose in Morgan County.

## PARTIES

**Plaintiffs**

6. DERRICK WILLIAMSON ("Mr. Williamson") is a citizen of the United States and a resident of the State of Georgia. He is the founder, Chief Executive Officer, Chief Financial Officer, and Secretary of The Way Dynamic Animal Therapy Encounters, Inc. At all times relevant to this Complaint, he was the lawful occupant and possessor of the real property located at 1280 Broughton Trail, Newborn, Morgan County, Georgia 30056 (hereinafter the "Property"). He brings this action in his individual capacity for the violation of his personal constitutional rights.

7. THE WAY DYNAMIC ANIMAL THERAPY ENCOUNTERS, INC. (hereinafter "The Ark") is a Domestic Profit Corporation duly organized and existing under the laws of the State of Georgia (Control Number 20242217), with its principal place of business at the Property. The Ask is a for-profit entity whose mission is to save human lives through animal therapy initiatives utilizing farm, domestic and exotic animals. Regulated primarily by the United States Department of Agriculture (USDA), The Ark is geared toward public exhibition, including petting zoos, birthday parties, film and television work, and other interactive encounters with the general public. At all times relevant to this Complaint, The Ark was the sole legal owner of the Property, as reflected on the recorded deed. Mr. Williamson is the sole officer and shareholder of The Ark. The Ark brings this action as a "person within the jurisdiction" of the State of Georgia, as that term is used in 42 U.S.C. § 1983, for the violation of its constitutional rights to property and due process. See *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989); *Grosjean v. American Press Co.*, 297 U.S. 233, 244 (1936) (holding that a corporation is a

"person" within the meaning of the Due Process and Equal Protection Clauses of the Fourteenth Amendment).

8. PARAMOUNT WILDLIFE INCORPORATED (hereinafter “Paramount Wildlife”) is a Domestic Nonprofit Corporation duly organized and existing under the laws of the State of Georgia, with its principal place of business at the Property. Paramount Wildlife’s mission is the rescue and rehabilitation of native Georgia wildlife. Native wildlife consists of animals indigenous to Georgia soil that are owned by the State and cannot be privately owned without state permits. Paramount Wildlife operates under strict Georgia Department of Natural Resources (DNR) permitting requirements that mandate specialized enclosures, 8-foot privacy fencing, veterinary oversight, and complete separation from exhibition animals and the general public. Native animals housed by Paramount Wildlife include Rabies Vector Species (RVS), requiring specialized protocols and training. Mr. Williamson is the registered agent and sole principal of Paramount Wildlife. Paramount Wildlife brings this action as a “person” under 42 U.S.C. § 1983 for the violation of its constitutional rights to property and due process.

***Defendants***

9. WILDLIFE CRITTERS CIRCLE OF LIFE REHABILTATION CENTER INC (hereinafter “Wildlife Critters’) is a Domestic Nonprofit Corporation organized under the laws of the State of Georgia (Control Number 12985039), with its principal office located at 1958 Davidson Rd. Shady Dale, Georgia Defendant Kanoy is the Chief Executive Officer, Secretary and Registered Agent of this entity. The corporation is sued for its role in the conversion, theft, and racketeering activity involving Plaintiffs’ animals.

10. ANIMALS ON SET, INC (hereinafter "Animals On Set") is a Domestic Profit Corporation organized under the laws of the State of Georgia (Control Number 18099538), with its principal office located at 160 Cross Road Covington, Georgia. Defendant Kanoy is the Incorporator, Owner, Operator and Registered Agent of this entity. Animals On Set is a for-profit commercial that supplies and trains animals for film and television productions in Georgia. The corporation is sued for its role in the conversion, theft, and racketeering activity involving Plaintiffs' animals.

11. MORGAN COUNTY, GEORGIA ("the County") is a political subdivision of the State of Georgia. The County is a "person" subject to suit under 42 U.S.C. § 1983 pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). The County is responsible for the policies, customs, and practices of its officials, including the Morgan County Sheriff's Office and the Morgan County Magistrate Court. The County is liable for the unconstitutional actions of its policymakers, including Defendant Holt, who served as the Chief Magistrate Judge and final policymaker for the Magistrate Court.

12. CONNIE HOLT ("Judge Holt") is sued in her individual capacity for damages arising from her non-judicial acts and in her official capacity for declaratory and injunctive relief. At all times relevant, she served as the Chief Magistrate Judge of Morgan County, Georgia, and acted under color of state law. As detailed herein, certain of her actions, including filing a personal stalking petition as a private citizen and interfering with law enforcement charging decisions, were non-judicial acts for which she is not entitled to absolute judicial immunity. See Mireles v. Waco, 502 U.S. 9 (1991); Forrester v. White, 484 U.S. 219 (1988).

13. STEPHEN A. BRADLEY ("Judge Bradley") is sued in his individual capacity for damages and in his official capacity for declaratory and injunctive relief. At all times relevant, he served as a Judge of the Superior Court of Morgan County, Georgia, and acted under color of state law.

14. JULIE RUARK ("Clerk Ruark") is sued in her individual capacity for damages and in her official capacity. At all times relevant, she was employed as the Magistrate Court Clerk of Morgan County and acted under color of state law. As detailed herein, she actively surveilled Plaintiff Williamson's social media accounts and initiated criminal complaints against him for exercising his First Amendment rights.

15. RICKY BROWN ("Deputy Brown") is sued in his individual capacity for damages and in his official capacity. At all times relevant, he was employed as a Deputy of the Morgan County Sheriff's Office and acted under color of state law.

16. CHRISTOPHER LASH ("Sergeant Lash") is sued in his individual capacity for damages and in his official capacity. At all times relevant, he was employed as a Sergeant of the Morgan County Sheriff's Office and acted under color of state law.

17. TIFFANY ALLISTON ("Sergeant Alliston") is sued in her individual capacity for damages and in her official capacity. At all times relevant, she was employed as a Sergeant of the Morgan County Sheriff's Office and acted under color of state law.

18. CHASE YOUNG ("Investigator Young") is sued in his individual capacity for damages and in his official capacity. At all times relevant, he was employed as an Investigator of the Morgan County Sheriff's Office and acted under color of state law. He acted as a chief conspirator, refused to investigate thefts on the property, harassed and threatened Mr.

Williamson, and was involved in the illegal removal of Mr. Williamson from his home without a warrant.

19. CAMERON PATAK ("Investigator Patak") is sued in his individual capacity for damages and in his official capacity. At all times relevant, he was employed as an Investigator of the Morgan County Sheriff's Office and acted under color of state law. He refused to investigate crimes on the farm, stating "I know who you are" in an act of racial profiling against the "young black farmer."

20. NICOLE KANOY ("Kanoy") is sued in her individual capacity for damages. She is a private citizen, the founder and CEO of "Wildlife Critters Circle of Life Rehabilitation Center & Animals On Set," and a former business partner of Mr. Williamson. She acted in concert and conspired with state actors to break into the facility, physically capture animals, sell them across state lines, and have some slaughtered. As a willful participant in joint activity with the State or its agents, she acted under color of state law for purposes of 42 U.S.C. § 1983.

21. JOHN and JANE DOES 1-20 are other unknown individuals, public officials, and deputies of Morgan County who participated in the unconstitutional acts and conspiracy alleged herein. Their true names and identities are not presently known to Plaintiffs, who will seek leave to amend this Complaint to add their true names when ascertained through discovery.

## STATEMENT OF FACTS

### A. The Property and the Business

22. In or around June 2021, Plaintiff The Ark purchased the Property, a farm located at 1280 Broughton Trail, Newborn, Morgan County, Georgia 30056, for approximately $1.4 million.

Janet Hardee contributed approximately $1 million in cash from an inheritance, and both Hardee and Williamson took a mortgage on the remaining approximately $400,000.

23. The deed to the Property was placed solely in the name of The Ark. At no time was the deed ever legally placed in the name of Janet Hardee, James Hardee, or any other individual.

24. On the Property, Mr. Williamson, established two distinct operations: (a) The Ark's exhibition and therapy business utilizing farm, domestic, and exotic animals for public interaction, and (b) Paramount Wildlife's native animal sanctuary for the rescue and rehabilitation of wildlife indigenous to Georgia. The Ark was in the process of obtaining USDA permitting for its exhibition side, but faced a six-month delay due to discriminatory actions by the USDA in cooperation with Morgan County officials and the Hardees. The exotic animals were on-site under state import permits and permission from the State of Georgia.

25. Paramount Wildlife was also in the permitting phase with the Georgia DNR. While no native animals were yet on-site, Paramount Wildlife had constructed specialized infrastructure on the Property in anticipation of receiving them, including 8-foot privacy fences, dedicated enclosures, and a chief animal hospital that was undergoing remodeling for the sanctuary. State regulations required that native animals be housed completely separate from exhibition animals and the general public. Mr. Williamson passed an examination of over 100 questions, scoring an 83%, to certify the facility for "Wildlife Rehabilitation" and qualify for the state permit.

26. On or about March 15, 2022, Mr. Williamson filed an amendment with the Georgia Secretary of State removing Janet Hardee as CFO and Brenda Tomas as Secretary of The Ark, making himself the sole officer (CEO, CFO, and Secretary) and registered agent of the corporation. The Property was listed as the corporation's principal office.

**B. The Hardee Campaign of Harassment**

27. Beginning in or around January 2022, Janet Hardee announced that she wanted to sell the Property, despite having been on the Property for only approximately 39 weeks. Mr. Williamson, as the sole deed holder and officer of The Ark, refused.

28. Beginning in February 2022, Janet Hardee and James Hardee (collectively, "the Hardees") initiated a campaign of harassment against Mr. Williamson, repeatedly filing false reports with the Morgan County Sheriff's Office alleging trespassing, animal cruelty, and other offenses.

29. Dispatch logs from the Morgan County Sheriff's Office document at least eleven calls to the Property between February 1, 2022, and March 24, 2022, alone. These calls included reports of "Subject Refusing to Leave," "Trespass," "Theft," and "Assault," all directed at Mr. Williamson despite his being the lawful owner and occupant of the Property.

30. Mr. Williamson was investigated by multiple agencies in connection with these false reports and was not found guilty of any crime.

31. On or about March 15, 2022, James Hardee's attorney filed a Lis Pendens against the Property, and approximately $100,000 in company assets were stolen from the Property.

32. On or about March 16, 2022, Mr. Williamson was physically assaulted, requiring emergency medical treatment costing over $5,360.

**C. The Unlawful Property Seizure by Judge Holt (April 7, 2022)**

33. On or about April 7, 2022, Defendant Judge Holt presided over a good behavior bond hearing in the Morgan County Magistrate Court, Case No. 2022-GB-0022.

34. At this hearing, Judge Holt issued mutual good behavior bonds ordering both the Hardees and Mr. Williamson to have no contact with each other for a period of six months.

35. However, Defendant Holt unilaterally and unconstitutionally interpreted the bond against Mr. Williamson to require his removal from the Property, while simultaneously allowing the Hardees (who had no ownership interest in the Property) to remain on the Property.

36. Under Georgia law, O.C.G.A. § 17-6-90, a good behavior bond is a mechanism to require a person to keep the peace. It does not authorize a magistrate judge to adjudicate property rights, issue eviction orders, or transfer possession of real property from one party to another. Judge Holt's order exceeded the scope of her statutory authority.

37. This order effectively dispossessed Plaintiff The Ark of its real property and Plaintiff Williamson of his home and business without any lawful basis, constitutionally adequate notice, or meaningful opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment.

38. Upon information and belief, upon learning that Mr. Williamson, a Black man, was the owner of the Property, Judge Holt expressed surprise that "this Black man owned all this land." This statement, coupled with the disparate treatment of Mr. Williamson compared to the white Hardees, demonstrates racial animus.

**D. The Destruction of the Animals and Business**

39. Immediately following Judge Holt's order removing Mr. Williamson from the Property, the Hardees, with the knowledge and implicit consent of county officials, began to sell, slaughter, and steal the animals owned by The Ark.

40. Within 48 hours of the ruling, the Hardees began selling animals from the Property. As confirmed in the official transcript of the March 15, 2023, hearing in Holt v. Williamson, Case No. 2023-SU-CA-050, Mr. Williamson's attorney stated: "animals that Mr. Williamson had under his care have been sold off or slaughtered. Cows, big birds, buffalo, they're gone. Every ounce of them, Judge, is gone."

41. The Georgia Department of Natural Resources forced the removal of exotic animals within seven days.

42. Due to the financial hardship caused by the unlawful eviction, after having invested over $1.2 million in the project, Mr. Williamson could no longer afford room, board, and a zookeeper for all his exotic animals. He was forced to proactively rehome and sell many of his exotic animals to zoos for their safety and well-being.

43. On or about February 6, 2023, the remaining animals, including four Asian water buffalo, were removed from the Property.

44. The actions of the Defendants directly and proximately caused the complete destruction of The Ark's business operations and the loss or death of numerous animals.

**E. The Superior Court Victory and Its Defiance**

45. On or about April 18, 2022, James Hardee filed a motion in the Rockdale County Superior Court to set aside the deed to the Property.

46. On November 9, 2022, the Honorable Judge Robert F. Mumford, Chief Judge of the Rockdale County Superior Court, ruled entirely in Plaintiffs' favor. Judge Mumford issued an Order denying the Hardees' Motion for Default Judgment, Motion to Set Aside Deed, and Motion for the Return of Real Property. This ruling confirmed that The Ark was the sole and undisputed owner of the Property.

47. Despite this binding Superior Court ruling, Defendant Judge Holt refused to enforce it. On or about January 25, 2023, Judge Holt denied Mr. Williamson's request to evict the Hardees from the Property and instead banned Mr. Williamson from the Property entirely.

48. This defiance of a Superior Court order further demonstrates the arbitrary and unconstitutional nature of Defendant Holt's actions.

**F. The Assault on Williamson and His Wrongful Arrest (October 2022)**

49. On or about October 11, 2022, after the initial six-month period of the unlawful removal order had expired, Mr. Williamson returned to the Property. That evening, Janet Hardee called James Hardee to come to the Property. When James Hardee arrived, he wielded a fishing rod in a threatening manner and struck Mr. Williamson in the chest.

50. Defendant Sergeant Lash of the Morgan County Sheriff's Office responded to the scene. The official Incident Report (Case \#202210110059) explicitly lists Mr. Williamson as the "Victim" and James Hardee as the "Offender" for Simple Battery (O.C.G.A. § 16-5-23). An arrest warrant, No. 2022-AW-0484, was subsequently issued for James Hardee.

51. Upon information and belief, Defendant Judge Holt interfered with the charging process, refusing to allow Mr. Williamson to press charges against Jordan Hardee and downgrading the charges against James Hardee.

52. On or about October 23, 2022, the day of Mr. Williamson's brother's funeral, deputies from the Morgan County Sheriff's Office, including Defendant Deputy Brown, arrived at the Property. Instead of arresting the perpetrator, James Hardee, the deputies turned their attention to Mr. Williamson.

53. Defendant Brown advised Mr. Williamson that he was being detained. When Mr. Williamson, who was the documented victim of the assault and was grieving the death of his brother, questioned the basis for his detention, Defendant Brown and other deputies threw him to the ground and forcibly apprehended him where Mr. Williamson had to be transported by ambulance to the Morgan Medical Emergency Room based on his soft tissue injuries suffered at the hands of the arresting officers.

54. Mr. Williamson was arrested and charged with Obstruction of an Officer, O.C.G.A. § 16-10-24(a). He was jailed. The charge was later bound over to Superior Court by Associate Magistrate Judge Julie Ruark on March 23, 2023, as Case No. 2022-AW-0507/2023-SU-CC-112.

55. On June 12, 2024, the State of Georgia, by and through Assistant District Attorney Jeff Preston Burks of the Ocmulgee Judicial Circuit moved to enter a Nolle Prosequi in the criminal case against Mr. Williamson. The stated reason for the dismissal was "insufficient evidence." The Honorable Judge Terry N. Massey of the Superior Court of Morgan County granted the Motion and ordered the Nolle Prosequi entered. The record was ordered restricted pursuant to

O.C.G.A. § 35-3-37. Thie favorable termination of the criminal proceeding confirms that there was never probable cause to support the Obstruction charge against Mr. Williamson.

56. This arrest was made without probable cause and was undertaken to further the conspiracy to punish and intimidate Mr. Williamson.

**G. The First Amendment Retaliation (February-March 2023)**

57. In or around February 2023, after years of being systematically denied justice in Morgan County, Mr. Williamson began posting about his experience on social media platforms, including TikTok and Facebook. His posts detailed the corruption and unconstitutional actions of county officials, including Defendant Judge Holt. The posts went viral, garnering widespread public attention.

58. In direct retaliation for this protected First Amendment activity, Defendant Judge Holt, acting in her personal capacity as a private citizen, filed a petition for a stalking temporary protective order (TPO) against Mr. Williamson on or about February 24, 2023. This act was not a judicial act; it was a personal, retaliatory act by a private citizen who happened to be a judge.

59. On or about February 22, 2023, Judge Holt recused herself from all matters involving Mr. Williamson, acknowledging a conflict of interest that has never been publicly disclosed.

60. On March 3, 2023, Defendant Clerk Ruark, acting under color of state law, actively surveilled Mr. Williamson's Facebook page. She filed an official complaint with the Morgan County Sheriff's Office (Incident Report \#202303030017), alleging that Mr. Williamson violated the TPO simply by sharing a TikTok video about Judge Holt on his Facebook page.

Defendant Sergeant Alliston took the report, which explicitly listed Judge Holt as the "Victim" and the "violation" as a social media post.

61. On March 15, 2023, Defendant Judge Bradley presided over the TPO hearing in *Holt v. Williamson*, Case No. 2023-SU-CA-050. The official transcript of this hearing reveals the following:

a. Judge Holt admitted that Mr. Williamson never contacted her directly. When asked, she stated: "Not directly, no."

b. Judge Holt's own attorney, Christian G. Henry of Hall Booth Smith, P.C., admitted on the record: "he proceeded to say mean things about the judge online and in person, which is, you know, not a crime, it's America."

c. The central demand of Judge Holt's petition was that Mr. Williamson take down his social media posts criticizing her.

d. Mr. Williamson was not permitted to call any witnesses in his defense.

62. Despite these admissions, Defendant Judge Bradley granted the stalking TPO for the maximum period of twelve months (March 15, 2023, through March 14, 2024). Judge Bradley ordered Mr. Williamson to have no contact with Judge Holt, to stay 200 yards from the courthouse, and to remove social media posts that "encourage harassing communication." Judge Bradley stated that "Derrick had already made a name for himself."

63. The TPO and the subsequent criminal investigations initiated by Clerk Ruark were used as weapons to silence Mr. Williamson's criticism of a public official and to punish him for exercising his First Amendment rights.

**H. The Ongoing Deprivation and Financial Harm**

64. As of the date of this filing, Plaintiffs remain dispossessed of the Property. This deprivation is not a discrete past event, but an ongoing, continuous violation of Plaintiffs' constitutional rights that occurs anew each day they are denied access to their land.

65. Despite being barred from the Property, Mr. Williamson has continued to suffer ongoing financial harm. As evidenced by a May 4, 2023, mortgage statement from BSI Financial Services, Mr. Williamson remains jointly liable for the $385,928.73 mortgage and has continued to make monthly payments of $2,404.43 for a property he cannot access.

66. Furthermore, Mr. Williamson has maintained The Ark as a corporation in good standing, paying annual registration fees to the Georgia Secretary of State as recently as April 17, 2024, listing the disputed Property as the corporate address.

67. Janet Hardee and James Hardee died in a plane crash near Covington Municipal Airport in February 2025. Upon information and belief, their heirs continue to occupy the Property.

68. Upon information and belief, the Hardee family has forged Mr. Williamson's signature and attempted to transfer the property deed to themselves. Specifically, this deed fraud occurred on December 26, 2024. Morgan County officials have failed to investigate or prevent this fraud, further demonstrating the ongoing nature of the conspiracy to deprive Plaintiffs of their property.

69. The Hardee family's actions are further tainted by jurisdictional fraud. The Hardees lived in Rockdale County for over 35 years, and James Hardee never lived in Morgan County. Despite lying on the record and later admitting he lived outside Morgan County, the Hardee estate probate was fraudulently filed in Morgan County. The probate has two different case numbers,

demonstrating collusion to keep the matter in Morgan County rather than the proper Rockdale County jurisdiction.

70. Mr. Williamson filed a formal complaint with the Judicial Qualifications Commission of Georgia against Judge Holt (Complaint No. 2023-691). On October 2, 2023, the Director of the JQC personally dismissed the complaint without presenting it to the full board, stating that the allegations did not "amount to a violation of the Code of Judicial Conduct." This exhaustion of administrative remedies further supports the need for federal court intervention.

## CAUSES OF ACTION

### COUNT I:
### Violation of 42 U.S.C. § 1983 — Deprivation of Property Without Due Process of Law (Fourteenth Amendment)

*(All Plaintiffs Against All Defendants)*

71. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

72. The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law.

73. Plaintiff The Ark had a clear, vested property right in the Property as the sole owner on the recorded deed. Plaintiff Williamson had a clear possessory right to the Property as its lawful occupant and the sole officer and shareholder of the corporation.

74. Defendants, acting individually and in concert, under color of state law, deprived Plaintiffs of their property rights by: (a) issuing an order removing Mr. Williamson from the

Property without jurisdiction or lawful authority; (b) refusing to enforce the Rockdale County Superior Court ruling that confirmed Plaintiffs' ownership; (c) allowing third parties to remain on, sell, destroy, and steal the assets of the Plaintiffs; and (d) continuing to deprive Plaintiffs of access to and use of their Property to this day.

75. This deprivation is an ongoing, continuous violation of Plaintiffs' constitutional rights. Each day that Plaintiffs are denied access to their lawfully owned property constitutes a new and distinct deprivation of their due process rights.

76. This deprivation occurred without constitutionally adequate pre-deprivation notice or a meaningful opportunity to be heard, in violation of Plaintiffs' procedural due process rights. The deprivation was also arbitrary, conscience-shocking, and without any rational basis, in violation of Plaintiffs' substantive due process rights.

77. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages including, but not limited to, the loss of their property, the destruction of their business, the loss of numerous animals, lost income, mortgage payments on an inaccessible property, and severe emotional distress.

## COUNT II:
## Violation of 42 U.S.C. § 1983 — Uncompensated Taking of Private Property (Fifth and Fourteenth Amendments)

*(By Plaintiffs The Ark and Paramount Against Defendant Morgan County)*

78. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

79. The Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the States and their political subdivisions through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation.

80. Plaintiff The Ark holds clear, vested legal title to the Property, which has an estimated fair market value of approximately $3.2 million.

81. Defendant Morgan County, acting through its final policymaker Judge Holt and its law enforcement officers, effectuated a physical taking of the Property by forcibly removing Mr. Williamson, barring him from returning, and allowing third parties to occupy, use, and exploit the Property and the assets located thereon.

82. This physical dispossession constitutes a per se taking of Plaintiff's private property under the Fifth Amendment.

83. The County has failed and refused to pay any compensation, let alone just compensation, for the taking of the Property.

84. Pursuant to the United States Supreme Court's decision in *Knick v. Township of Scott*, 588 U.S. 180 (2019), a property owner has an actionable Fifth Amendment takings claim under 42 U.S.C. § 1983 at the moment the government takes the property without paying for it, without any requirement to first exhaust state court remedies.

85. The taking of the Property is an ongoing, continuous constitutional violation that occurs anew each day the County maintains the dispossession without providing just compensation.

86. As a direct and proximate result of the County's uncompensated taking, Plaintiff The Ark has suffered damages in the amount of the fair market value of the Property taken, the value of

the business and assets destroyed, and the loss of use and enjoyment of the Property, for which it is entitled to just compensation under the Fifth Amendment.

## COUNT III:

**Violation of 42 U.S.C. § 1983 — Malicious Prosecution (Fourth and Fourteenth Amendments)**
*(By Plaintiff Williamson Against Defendants Brown, Lash, and Morgan* County)

87. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

88. The Fourth Amendment, as applied to the States through the Fourteenth Amendment, protects individuals from malicious prosecution.

89. Defendants Brown, Lash, and other unknown deputies caused the initiation and continuation of a criminal prosecution against Plaintiff Williamson for Obstruction of an Officer without probable cause and with malice.

90. The prosecution was initiated in retaliation for Mr. Williamson's attempts to assert his property rights and after he himself was the documented victim of a battery by James Hardee.

91. The criminal proceeding against Mr. Williamson (Case No. 2022-AW-0507/2023-SU-CC-112), terminated in his favor on June 12, 2024, when the State of Georgia entered a Nolle Prosequi on the ground of ‘insufficient evidence.” This favorable termination satisfies the requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Thompson v. Clark*, 596 U.S. 26 (2022), which held that a malicious prosecution claim under the Fourth Amendment accrues upon favorable termination of the underlying criminal prosecution, and that the plaintiff need not

show that the termination “affirmatively indicate his innocence.” Plaintiff only need to show that the prosecution ended without a conviction. The Nolle Prosequi for “insufficient evidence” constitutes favorable termination as a matter of law. This claim is therefore fully ripe. The statue of limitations began to run on June 12, 2024, and this action is timely filed within the applicable two-year limitations period.

92. As a direct and proximate result of the malicious prosecution, Plaintiff Williamson has suffered damages including arrest, detention, the posting of bond, the cost of legal defense, reputational harm, and severe emotional distress.

**COUNT IV:**
**Violation of 42 U.S.C. § 1983 — Equal Protection (Fourteenth Amendment)**
*(All Plaintiffs Against All Defendants)*

93. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

94. The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person within its jurisdiction the equal protection of the laws.

95. Defendants intentionally discriminated against Plaintiff Williamson on the basis of his race (Black). This discriminatory intent is evidenced by, among other things, Defendant Holt's expressed surprise that a "Black man owned all this land," and the ongoing, disparate treatment of Mr. Williamson compared to the white Hardees.

96. Defendants have engaged in a continuous pattern of discriminatory conduct by allowing the white Hardees to remain on the Property despite having no ownership interest and being the aggressors in physical altercations, while simultaneously barring Mr. Williamson, the Black

property owner, from his own land. This discriminatory dispossession is an ongoing violation that continues to this day.

97. Defendants' actions were motivated by racial animus and resulted in the unequal application of the law, depriving Plaintiffs of their property and liberty.

98. As a direct and proximate result of this discrimination, Plaintiffs suffered damages as alleged herein.

**COUNT V:**
**Violation of 42 U.S.C. §1983- First Amendment Retaliation**
*(By Plaintiff Williamson Against Defendants Holt, Bradley, Ruark, and Alliston)*

99. Plaintiffs incorporate by reference all preceding paragraphs as though fully set for the herein.

100. The First Amendment to the United States Constitution protects the right of citizen to speak freely, to criticize public officials, and to petition the government for a redress of grievances.

101. Plaintiff Williamson engaged in constitutionally protected speech when he posted videos and commentary on social media platforms (TikTok and Facebook) exposing the corruption and unconsitutionl actions of Morgan County officials, specially including Defendant Judge Holt.

102. Defendants Holt, Bradley, Ruark, and Alliston took adverse actions against Mr. Williamson that would likely deter a person of ordinary fitness from engaging in speech. These actions included: (a) Judge Holt filing a retaliatory stalking TPO petition based solely on protected social media posts; (b) Clerk Ruark actively surveilling Mr. Williamson's social media and filing a police report over a shared video; (c) Sergeant Alliston processing the retaliatory

police report; and (d) Judge Bradley granting the TPO and explicitly ordering Mr. Williamson to remove his social media posts.

103. There is a direct casual connection between Mr. Williamson's protected speech and the Defendants' retaliatory actions. The Defendants' own statements and records explicitly cite the social media posts as the basis for their actions.

104. As a direct and proximate result of this retaliation, Plaintiff Williamson suffered damages, including the chilling of his free speech rights, reputational harm, and emotional distress.

**COUNT VI:**
**Violation of 42 U.S.C. §1983- Free Exercise of Religion (First Amendment)**
*(All Plaintiffs Against All Defendants)*

105. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

106. The Free Exercise Clause of the First Amendment, applied to the States through the Fourteenth Amendment, prohibits government officials from burdening a person's sincere religious practice.

107. Plaintiff Williamson operates The Ark ("The Way Dynamic Animal Therapy Encounters") with a sincere religious mission, utilizing animal therapy as a faith-based ministry to provide spiritual and emotional healing to the public.

108. Mr. Williamson's sincere religious mission is evidenced by the very name and structure of his ministry. "The Way" is a direct reference to the words of Jesus Christ: "I am the way, the truth and, and the life" (John 14:6), and to the earliest Christians, who were known as followers of "The Way" (Acts 9:2; 19:9; 24:14). "The Ark" references the vessel God commanded Noah

to build for the preservation of animal life (Genesis 6-9). Mr. Williamson's own website describes his "extensive background in ministry and community work," states that the Property was gifted specifically "to Derrick's ministry," and confirms that the deed was placed "in the ministry's name." The entity is not merely a commercial enterprise; it is the corporate embodiment of a faith-based calling to save lives for both humans and animals. Moreover, through spiritual grounded therapy encounters. Defendants' actions destroyed the physical location of this ministry, seized the animals through which the ministry operated, and rendered Mr. Williamson unable to practice his faith through the animal therapy ministry he was called to establish.

109. Defendants, acting under color of state law, substantially burdened Plaintiffs' free exercise of religion by unlawfully evicting Mr. Williamson from the Property, seizing the animals used in the ministry, and destroying the physical location where the religious mission was conducted.

110. Defendants' actions were not neutral or generally applicable, but were target at Mr. Williamson and his specific operations, and were driven by racial animus and personal retaliation rather than any compelling governmental interest.

111. As a direct and proximate result of this unconsitutionl burden on their religious exercise, Plaintiffs suffered damages as alleged herein.

**COUNT VII:**
**Violation of 42 U.S.C. §1985(3) ---Conspiracy to Interfere with Civil Rights**
*(All Plaintiffs Against All Defendants)*

112. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

113. Defendants conspired for the purpose of depriving Plaintiffs, either directly or indirectly, of the equal protection of the laws, or of equal privileges and immunities under the laws.

114. The conspiracy was motivated by racial or otherwise class-based, invidiously discriminatory animus against Mr. Williamson.

115. Defendants committed acts in furtherance of the conspiracy, including but not limited to: issuing unlawful orders to remove Mr. Williamson from his property, refusing to enforce valid Superior Court orders, arresting Mr. Williamson without probable cause, using the TPO process to silence his speech, and failing to investigate or prevent the ongoing deed fraud by the Hardee family.

116. This conspiracy is an ongoing, continuous offense. The ongoing deprivation of the Property and the recent failure to investigate the forged deed constitute overt acts in furtherance of the conspiracy that have occurred within the applicable statute of limitations period.

117. As a direct and proximate result of the conspiracy, Plaintiffs were injured in their person and property and were deprived of rights and privileges of citizens of the United States.

**COUNT VIII:**
**Violation of 42 U.S.C. § 1986 — Action for Neglect to Prevent Conspiracy**
*(All Plaintiffs Against All Defendants)*

118. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

119. Defendants had knowledge that the wrongs conspired to be done, as described in Count IV, were about to be committed and were actively ongoing.

120. Defendants had the power to prevent or aid in preventing the commission of these wrongs but neglected or refused to do so. Specifically, Defendants have failed to intervene to stop the ongoing deprivation of Plaintiffs' property and have failed to investigate the recent deed fraud committed by the Hardee family within the last twelve months.

121. As a direct and proximate result of Defendants' wrongful neglect, Plaintiffs suffered damages as alleged herein.

**COUNT IX:**
**Municipal Liability (Monell Claim)**
*(All Plaintiffs Against Defendant Morgan County)*

122. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

123. The unconstitutional actions of the individual Defendants were taken pursuant to the official policies, customs, and practices of Morgan County.

124. Defendant Holt, as the Chief Magistrate Judge, was a final policymaker for the County with respect to the issuance of good behavior bonds and the administration of the Magistrate Court. Her unconstitutional actions represent the official policy of the County.

125. The County failed to adequately train, supervise, and discipline its deputies and officials regarding the lawful execution of good behavior bonds, the protection of property rights, the use of force, and the protection of First Amendment rights. This failure amounts to deliberate indifference to the constitutional rights of the citizens of Morgan County.

126. The County's policies, customs, and failures to train were the moving force behind the constitutional violations suffered by Plaintiffs.

**COUNT X:**
**Declaratory and Injunctive Relief**
*(All Plaintiffs Against Defendants Holt, Bradley, and Morgan* County)

127. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

128. An actual controversy exists between Plaintiffs and Defendants regarding the lawful ownership and right to possession of the Property, and the constitutionality of the orders barring Mr. Williamson from the Property.

129. Plaintiffs seek a declaratory judgment that:

a. The Ark is the sole lawful owner of the Property;

b. The orders issued by the Magistrate Court removing Mr. Williamson from the Property were issued without jurisdiction and are void ab initio;

c. The actions of Defendants violated Plaintiffs' constitutional rights under the First, Fourth, and Fourteenth Amendments.

130. Plaintiffs seek preliminary and permanent injunctive relief:

a. Enjoining Defendants from further interfering with Plaintiffs' ownership, possession, and use of the Property;

b. Ordering the immediate restoration of the Property to Plaintiffs;

c. Enjoining Defendants from enforcing any unconstitutional orders or TPOs against Mr. Williamson;

d. Ordering the expungement of Mr. Williamson's arrest record related to the unconstitutional actions alleged herein.

131. Plaintiffs have no adequate remedy at law for the ongoing deprivation of their property and constitutional rights, and they will suffer irreparable harm if injunctive relief is not granted.

**COUNT XI:**
**Violation of 18 U.S.C. § 1962(c) and (d) — Civil RICO**
*(All Plaintiffs Against Defendants Kanoy, Wildlife Critters Circle of Life Rehabilitation Center of Life Rehabilitation Center, Inc., Animals On Set, Inc. Young, Patak, and John/Jane Does)*

132. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

133. Defendants Kanoy, Wildlife Critters Circle of Life Rehabilitation Center, Inc., Animals On Set, Inc., Young, Patak, and John/Jane Does, along with the deceased Hardees and their heirs, formed an "association-in-fact" enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4). The purpose of the Enterprise was to unlawfully dispossess Plaintiffs of the Property, steal and sell Plaintiffs' valuable animals, other corporate assets and fraudulently acquire title to the Property.

134. The Enterprise engaged in, and its activities affected, interstate commerce, specifically through the interstate transportation and sale of stolen exotic animals.

135. Defendants conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(1) and (5).

136. The pattern of racketeering activity consisted of multiple related and continuous predicate acts spanning from April 2022 through the present, including but not limited to: a. Theft by Taking and Deception (O.C.G.A. §§ 16-8-2, 16-8-3), constituting state felonies punishable by more than one year in prison, by stealing many animals valued in excess of $25,000 and fraudulently acquiring the deed to the Property on December 26, 2024. b. Interstate Transportation of Stolen Property (18 U.S.C. § 2314), by transporting the stolen animals across state lines for sale. c. Wire Fraud (18 U.S.C. § 1343) and Mail Fraud (18 U.S.C. § 1341), by using electronic communications and the mail system to file fraudulent deeds and probate documents in Morgan County to further the scheme. d. Extortion under Color of Official Right (18 U.S.C. § 1951), by Defendants Young and Patak using their official positions to facilitate the theft and protect the Enterprise from investigation.

137. Defendants also conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d), by agreeing to facilitate the scheme and committing overt acts in furtherance thereof.

138. As a direct and proximate result of Defendants' RICO violations, Plaintiffs have been injured in their business and property, including the loss of the $3.2 million Property, the destruction of The Ark's business, and the theft of over $25,000 worth of animals. Additionally, the destruction of Paramount Wildlife's native animal sanctuary, including the theft of its specialized infrastructure, fencing and medical supplies, rending it unable to complete the state permitting process.

139. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the damages they sustained, plus costs and reasonable attorney's fees.

**COUNT XII:**
**Violation of O.C.G.A. § 51-10-6 — Civil Theft of Personal Property**
*(By Plaintiff The Ark and Paramount Against Defendants Kanoy, Wildlife Critters Circle of Life Rehabilitation Center, Inc., Animals On Set Inc., and John/Jane Does)*

140. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

141. Under O.C.G.A. § 51-10-6, any owner of personal property is authorized to bring a civil action to recover damages from any person who commits a theft involving the owner's personal property.

142. Plaintiff The Ark was the lawful owner of numerous exhibition, farm, domestic and exotic animals which constitute personal property under Georgia law. Plaintiff Paramount Wildlife was the lawful owner of specialized infrastructure located on the Property, including 8-foot privacy fencing, medical supplies, veterinary equipment and literature, all of which constitute personal property under Georgia law.

143. Defendant Kanoy, acting individually and on behalf of her corporate entities Wildlife Critters Circle of Life Rehabilitation Center, Inc., and Animals on Set, Inc., and in concert with the Hardees and John/Jane Does, willfully committed theft by taking (O.C.G.A. § 16-8-2) by breaking into the facility, capturing the animals, and removing them from the Property without authorization or compensation. Defendants further stole Paramount Wildlife's specialized fencing, medical supplies and equipment.

144. The total value of the stolen personal property exceeds $5,000.00.

145. As a direct and proximate result of this civil theft, Plaintiff The Ark has suffered substantial compensatory damages, including the value of the animals and the resulting

destruction of its animal therapy business. Plaintiff Paramount Wildlife has suffered the loss of its specialized infrastructure, medical supplies, and equipment, completely destroying its ability to complete the state permitting process and operate its native wildlife sanctuary.

146. Pursuant to O.C.G.A. § 51-10-6, Plaintiff The Ark is entitled to recover full compensatory damages, plus reasonable attorney's fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendants, jointly and severally, as follows:

**A. Compensatory Damages:** Award compensatory damages to Plaintiffs in an amount to be determined at trial, but not less than $3,000,000.00, for the loss of property, destruction of business, loss of animals, lost income, mortgage payments, physical injury, and severe emotional distress;

**B. Punitive Damages:** Award punitive damages against the individual Defendants in their individual capacities in an amount to be determined at trial, but not less than $5,000,000.00, to punish them for their malicious, willful, and reckless disregard of Plaintiffs' constitutional rights, and to deter similar conduct in the future;

**C. Declaratory Relief:** Enter a declaratory judgment as requested in Count X;

**D. Injunctive Relief:** Enter preliminary and permanent injunctive relief as requested in Count X, including the immediate restoration of

the Property to Plaintiffs;

**E. Attorney\'s Fees and Costs:** Award Plaintiffs their reasonable attorney's fees, expert fees, and costs of suit pursuant to 42 U.S.C. §1988 and any other applicable law;

**F. Treble Damages:** Award treble damages pursuant to 18 U.S.C. § 1964(c) for Defendants' RICO violations;

**G. Civil Theft Damages:** Award full compensatory damages plus reasonable attorney's fees pursuant to O.C.G.A. § 51-10-6**;**

**H. Pre- and Post-Judgment Interest:** Award pre-judgment and post-judgment interest at the highest rate allowed by law; and

I. **Other Relief:** Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this **8th** day of **May**, 2026.

*/s/Walter A. Bernard, Esquire*
*Walter A. Bernard, Esquire*

Law Offices of Walter A. Bernard
840 1st Ave Suite 400
King of Prussia, PA 19406
Telephone: (610) 466-5480
Email: info@waltbernardlaw.com

GA Bar No. 780425
*Attorney for Plaintiffs*
*Derrick Williamson,The Way Dynamic Animal Therapy Encounters, Inc. and Paramount Wildlife Incorporated*

## VERIFICATION

I, Derrick Williamson, being duly sworn, depose and state that I am a Plaintiff in this action, that I have read the foregoing Complaint, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

*/s/ Derrick Williamson*
Derrick Williamson

**Dated**: May 8, 2026

**VERIFICATION**

I, THE WAY DYNAMIC ANIMAL THERAPY ENCOUNTERS, INC., being duly sworn, depose and state that I am a Plaintiff in this action, that I have read the foregoing Complaint, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

__*/s/ Derrick Williamson*______________________________
Derrick Williamson Authorized Agent signing on behalf of
THE WAY DYNAMIC ANIMAL THERAPY ENCOUNTERS, INC.

**Dated**: May 8, 2026

**VERIFICATION**

I, PARAMOUNT WILDLIFE INCORPORATED being duly sworn, depose and state that I am a Plaintiff in this action, that I have read the foregoing Complaint, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

__*/s/ Derrick Williamson*___________________________
Derrick Williamson Authorized Agent signing on behalf of
PARAMOUNT WILDLIFE INCORPORATED

**Dated**: May 8, 2026